Alan Harris (SBN 146079)
HARRIS & RUBLE
6424 Santa Monica Blvd.
Los Angeles, California 90038
Telephone: 323.962.3777
Facsimile: 323.962.3004
aharris@harrisandruble.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

EDMOND VALENZUELA, individually and on behalf of all others similarly situated,

Plaintiff,

v.

MANCINI INTERNATIONAL, INC., WILLIAM MANCINI, MOTION PICTURE AND TELEVISION FUND, and DOES 1 to 20,

Defendants.

Case No. CV-12-09068 DDP (PLAx)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS-ACTION SETTLEMENT AND CONDITIONAL CERTIFICATION OF SETTLEMENT CLASS**

Date: August 26, 2013
Time: 10:00 a.m.
Place: Ctrm. 3, 2nd Floor
312 N. Spring Street
Los Angeles, CA 90012

*Assigned to Hon. Dean D. Pregerson*

Complaint filed Aug. 15, 2012
Action Removed Oct. 22, 2012

# TABLE OF CONTENTS

I. Introduction .......... 1
II. Summary of the Claims and of the Relevant Procedural History .......... 2
III. Summary of the Settlement Agreement and Proposed Distribution .......... 3
IV. Incentive Awards and Attorney's Fees .......... 4
V. Notice to the Class .......... 6
VI. Release Provisions and Opting Out .......... 7
VII. The Court Should Conditionally Certify the Class and Should Preliminarily Approve the Settlement Agreement .......... 8
A. Class Certification Is Warranted .......... 8
B. The Settlement Meets the Requirements for Preliminary Approval .......... 10
i. Settlement Negotiations Were Conducted at Arm's Length .......... 11
ii. The Settlement Has No Obvious Deficiencies .......... 11
V. Conclusion .......... 14

# TABLE OF AUTHORITIES

## CASES

Adames v. Mitsubishi Bank, Ltd., 133 F.R.D. 82 (E.D.N.Y. 1989) .......... 8

Boeing Co. v. Van Germet, 444 U.S. 472 (1980) .......... 5

Brinker v. Superior Court, 53 Cal. 4th 1004 (2012) .......... 11

Campbell v. First Investors Corp.,, 2012 U.S. Dist. LEXIS 155549 .......... 5

Cortez v. Purolator Air Filtration Products Co., 23 Cal. 4th 178 (2000) .......... 3

Dunleavy v. Nadler,, 213 F.3d 454 (9th Cir. 2000) .......... 8, 11

Elliott v. ITT Corp., 150 F.R.D. 569 (N.D. Ill. 1992) .......... 9

Garcia v. Bana,, 2013 U.S. Dist. LEXIS 22415 (N.D. Cal. filed Feb. 19, 2013) .......... 3

Gonzalez v. Millard Mall Servs.,, 2012 U.S. Dist. LEXIS 118133 (S.D. Cal. filed Aug. 21, 2012) .......... 3

Hanlon v. Chrysler Corp., 150 F.3d 1011 (9th Cir. 1998) .......... 11

In re NASDAQ Market-Makers Antitrust Litig., 187 F.R.D. 465 (S.D.N.Y. 1998) .......... 12

In re Warfarin Sodium Antitrust Litig., 212 F.R.D. 231 (D. Del. 2002) .......... 13

Int'l Union v. Gen. Motors Corp., 497 F.3d 615 (6th Cir. 2007) .......... 6

Joseph v. Gen. Motors Corp., 109 F.R.D. 635 (D. Colo. 635) .......... 9

Khanna v. Inter-Con Sec. Sys., Inc.,, 2012 U.S. Dist. LEXIS 137651 (E.D. Cal. filed Sept. 25, 2012) .......... 8

Labbate-D'Alauro v. GC Servs. Ltd. P'ship, 168 F.R.D. 451 (E.D.N.Y. 1996) .......... 8

Linney v. Cellular Alaska P'ship, 151 F.3d 1234 (9th Cir. 1998) .......... 8

Nat. Rural Telecommunications Co-op. v. DIRECTV, Inc., 221 F.R.D. 523 (C.D. Cal. 2004) .......... 12

Negrete v. Allianz Life Ins. Co. of N. Am., 287 F.R.D. 590 (C.D. Cal. 2012) .......... 9

Officers for Justice v. Civil Serv. Comm., 688 F.2d 615–25 (9th Cir. 1982), .......... 8

Ordonez v. Radio Shack, Inc.,, 2013 U.S. Dist. LEXIS 7868 (C.D. Cal. filed Jan. 17, 2013) .......... 12

Partlow v. Jewish Orphans' Home, Inc.,
645 F.2d 757 (9th Cir. 1981) ....................3

Rannis v. Recchia,
380 Fed. Appx. 646 (9th Cir. 2010) ....................9

Rodriguez v. Disner.,
688 F.3d 645 (9th Cir. 2012) ....................4

Rodriguez v. West Publ'g Corp.,
563 F.3d 948 (9th Cir. 2009) ....................4, 12

Rodriguez v. West Publ'g Corp.,,
2007 U.S. Dist. LEXIS 74767 (C.D. Cal. filed Sept. 10, 2007) ....................12, 13

Sibert v. TV Magic, Inc.,,
2012 U.S. Dist. LEXIS 118245 (C.D. Cal. filed Aug. 21, 2012) ....................9

Smith v. CRST Van Expedited, Inc.,,
2013 U.S. Dist. LEXIS 6049 (S.D. Cal. filed Jan. 14, 2013) ....................4, 5

Tomkins v. C & S Wholesale Grocers, Inc.,,
2012 U.S. Dist. LEXIS 24943 ....................3

Torrisi v. Tucson Elec. Power Co.,
8 F.3d 1370 (9th Cir. 1993) ....................11

Van Vranken v. Atl. Richfield Co.,
901 F. Supp. 294 (N.D. Cal. 1995) ....................5

Vasquez v. Coast Valley Roofing, Inc.,
266 F.R.D. 482 (E.D. Cal. 2010) ....................5

Wal-Mart Stores, Inc. v. Dukes,
131 S. Ct. 2541 (2011) ....................9

Yokoyama v. Midland Nat'l Life Ins. Co.,
594 F.3d 1087 (9th Cir. 2010) ....................10

Young v. Polo Retail, Inc.,
2006 WL 3050861 (N.D. Cal. filed Oct. 25, 2006) ....................10

**STATUTES**

29 U.S.C. § 216(b) ....................1, 2

29 U.S.C. § 255(a) ....................3

29 U.S.C. § 256(b) ....................3

Cal. Bus. & Prof. Code section 17200 et seq. ....................1, 3

Cal. Lab. Code § 203 ....................1, 3

Cal. Lab. Code § 226 ....................1, 3

Cal. Lab. Code § 226.7 ....................1

Cal. Lab. Code § 338 ....................1

Cal. Lab. Code § 510 ....................1

Cal. Lab. Code § 512 ....................1

Cal. Lab. Code § 1194 ....................1

Cal. Lab. Code § 1198 ....................1

Cal. Lab. Code § 2698 et seq. ....................1

**RULES**

Fed. R. Civ. Proc. 23(a) ....................8
Fed. R. Civ. Proc. 23(a)(2)....................9
Fed. R. Civ. Proc. 23(b) ....................10
Fed. R. Civ. Proc. 23(b)(3) ....................10
Fed. R. Civ. P. 23(c)(1)....................12
Fed. R. Civ. Proc. 23(c)(2)(B) ....................6
Fed. R. Civ. Proc. 23(c)(3)....................6

**OTHER AUTHORITIES**

4 Alba Conte & Herbert Newberg, Newberg on Class Actions § 11:50 (4th ed. 2002) ....................12
Newberg § 11:41 ....................13

## MEMORANDUM OF POINTS & AUTHORITIES

### *I. Introduction*

Plaintiff Edmond Valenzuela, on the one hand, and Defendants Mancini International, Inc. ("MII"), William Mancini (the manager of MII) and the Motion Picture and Television Fund ("MPTF"), on the other hand, have reached a settlement of the class and collective-action claims alleged in the above-captioned action. Plaintiff hereby asks the Court to preliminarily approve the settlement and conditionally certify the Class. The Settlement Agreement requires Defendants to pay $15,000 in cash. Settlement Agreement, ¶4 (July 17, 2013, Decl. of Alan Harris in Supp. of Mot. for Preliminary Approval of Class-Action Settlement & Conditional Certification of Settlement Class ("July 17, 2013, Harris Decl."), Ex. 1.)

In this action, Plaintiffs contend that MII violated various state and federal wage and hour laws, including:

1. Failing to Pay Minimum Wage and/or Overtime, Cal. Lab. Code §§ 510, 1194, and 1198 and IWC Wage Order 4
2. Failure to Provide Accurate Itemized Wage Statements, Cal. Lab. Code § 226
3. Failure to Provide Proper Rest Breaks, Cal. Lab. Code §§ 226.7 and 512 and IWC Wage Order 4
4. Failure to Provide Proper Rest Breaks, Cal. Lab. Code §§ 226.7 and 512 and IWC Wage Order 4
5. Continuing Wages, Cal. Lab. Code § 203
6. Fair Labor Standards Act, 29 U.S.C. § 216(b), Failure to Pay Minimum Wage and/or Overtime
7. Cal. Bus. & Prof. Code section 17200 *et seq.*—Restitution
8. Civil Penalties, Cal. Lab. Code § 2698 *et seq.*, Labor Code Private Attorneys General Act

Under the terms of Settlement Agreement executed by the parties, a Gross Settlement Fund of $15,000 has been established as compensation for the employees. It is estimated that the Gross Settlement Fund will provide all participating hourly-paid individuals employed by Defendants in California with an estimated approximate *payment in full* of their wages, including overtime. (July 29, 2013, Harris Decl., ¶ 7.) The draft Notice will advise all employees of the settlement terms. All told, this is a reasonable result, achieved after lengthy negotiations. (July 29, 2013, Harris Decl." ¶ 4.) The proposed resolution of this matter should be approved.

***II. Summary of the Claims and of the Relevant Procedural History***

Plaintiff commenced this action on August 15, 2012. By way of the operative First Amended Complaint ("FAC"), Plaintiff asserts eight state and federal causes of action. Plaintiffs brought this case as a class action, a collective action under the FLSA, 29 U.S.C. § 216(b), and one to secure Private Attorneys General Act ("PAGA") civil penalties.

Defendant MII is a California corporation headquartered in Los Angeles County. MII provides security and protection services to entities such as the MPTF. MII is a small, privately held, company run in a typically entrepreneurial style. (July 29, 2013, Decl. of Alan Harris, ¶ 5.) As such, it is understandable that MII violated various wage and hour laws that it was required to follow. However, there is no evidence that Defendants routinely acted in a venal fashion vis-à-vis its employees. To the contrary, with the exception of the Plaintiff, the defense has represented that all employees appear to have been paid, and paid well in excess of the minimum wage. Indeed, according to the defense, all of some sixty employees other than the Plaintiff have settled the case with MII and none wish to participate in this action. (July 29, 2013, Harris Decl. ¶ 5.)

In connection with the annual Oscar festivities, MII employed Plaintiff and dozens of other security officers on Saturday, February 25, 2012 at the annual "Night Before Party" at the Beverly Hills Hotel, in Beverly Hills, California.

After engaging in significant negotiations, a long-form Settlement Agreement was executed by the parties. (July 29, 2013, Harris Decl. Ex.1.) That Settlement Agreement is the subject of the present Motion.

***III. Summary of the Settlement Agreement and Proposed Distribution***

Under the FAC, the Class consists "of all natural persons who were employed by Defendant Mancini International, Inc. as a security officer in or around February of 2012 at the 'Night Before Party' held by the Motion Picture and Television Fund." (First Am. Compl. ¶ 37.) While the Business and Professions Code has a four-year statute of limitations, the FLSA has a two-year statute.[1] Compare Cal. Bus. & Prof. Code § 17208 (stating that "[a]ny action to enforce any cause of action pursuant to this chapter shall be commenced within four years after the cause of action accrued") with 29 U.S.C. § 255(a) (stating that any action for unpaid overtime "shall be forever barred unless commenced within two years after the cause of action accrued").[2]

According to Defendants, there are but a few dozen Class Members. (July 29,

[1] Plaintiffs' Labor Code claims for overtime and missed breaks, which are subject to a three-year limitations period, see Cal. Lab. Code § 338 (adopting a three-year statute for "action[s] upon a liability created by statute), are subsumed by the Business and Professions Code's longer statutory period, see Tomkins v. C & S Wholesale Grocers, Inc., 2012 U.S. Dist. LEXIS 24943 at *11–12 (E.D. Cal. filed Feb. 27, 2012) (explaining that, because California's unfair-competition law "'admits of no exceptions,'" an overtime claim brought via section 17200 *et seq.* "'is subject to the four-year period of limitations created by . . . section [17208]'") (quoting Cortez, 23 Cal. 4th at 178–79). The one-to-three-year statutory period for Plaintiffs' wage-statement claim, see Garcia v. Bana, 2013 U.S. Dist. LEXIS 22415 at *33–34 (N.D. Cal. filed Feb. 19, 2013) (explaining that claims under section 226 are subject to a one-year or three-year limitations period, depending on whether "actual" or "statutory" damages are sought), and the one-year statute for Plaintiffs' civil-penalties claim, see Gonzalez v. Millard Mall Servs., 2012 U.S. Dist. LEXIS 118133 at *7 (S.D. Cal. filed Aug. 21, 2012) (stating that LCPAGA claims are "subject to a one year statute of limitations), are likewise shorter than the four-year period under the unfair-competition law. Similarly, Plaintiffs' claim for continuing wages is no longer than four years. See Cal. Lab. Code § 203(b) (stating that "[s]uit may be filed for [continuing-wage] penalties at any time before the expiration of the statute on an action for the wages from which the penalties arise").

[2] Although the FLSA adopts a longer, three-year statutory period for "willful" violations, see 29 U.S.C. § 255(a), the statute "continues to run until a valid consent [to join the action] is filed." Partlow v. Jewish Orphans' Home, Inc., 645 F.2d 757, 760 (9th Cir. 1981) (citing 29 U.S.C. § 256(b)). Because no Class Members have yet "opted in"—indeed, because notice will not be delivered to Class Members until after the Settlement Agreement is preliminarily approved, presumably in August of 2013—the February of 2012, commencement date for FLSA liquidated damages should not be an issue in this case.

2013, Harris Decl. ¶ 5.) Pursuant to the Settlement Agreement, Defendants will pay $15,000 in cash for the benefit of the Class, a recovery which should enable the Plaintiff to be made whole, since all other Class Members have purportedly entered into releases. The $15,000 Total Maximum Settlement Fund will be used to pay the costs of delivering the Class Notice and the Claim Form to the Class, as well as to pay attorney's fees and costs to Class Counsel and an enhancement award to the named Plaintiff, all as approved by the Court. (July 29, 2013, Harris Decl. Ex. 1 at ¶ 5.)

After the above deductions have been made from the Gross Settlement Fund, the balance will be distributed to Class Members in satisfaction of the claims alleged in the First Amended Complaint. Defendants are not entitled to a reversion of any amounts. All money in Fund will be distributed to Class Members who participate, presumably Plaintiff. Below is a detailed discussion of the proposed distribution of the funds.

***IV. Incentive Awards and Attorney's Fees***

Under the terms of the Settlement Agreement, Class Counsel will apply for an incentive award to Plaintiff of $2,000, for his effort in bringing, prosecuting, and settling this case. (July 29, 2013, Harris Decl. Ex. 1 at ¶ 4.) As contemplated by the Settlement Agreement, this award will come "off the top" of the Gross Settlement Fund.

According to the Ninth Circuit, "[i]ncentive awards are fairly typical in class action cases" and "are intended to compensate class representatives for work done on behalf of [a] class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." Rodriguez v. West Publ'g Corp., 563 F.3d 948, 958–59 (9th Cir. 2009) (emphasis removed), vacated on other grounds, 688 F.3d 645, 660 (9th Cir. 2012). As recently explained by the Southern District of California, courts should consider "'the risk to the class representative in commencing suit, both financial and otherwise,'" as well as "'the amount of time and effort spent by the class representative'" and "'the personal benefit (or lack thereof) enjoyed by the class as a result of the litigation.'" Smith v. CRST Van Expedited, Inc., 2013 U.S. Dist. LEXIS 6049 at *16 (S.D. Cal. filed Jan. 14, 2013)

(quoting Van Vranken v. Atl. Richfield Co., 901 F. Supp. 294, 299 (N.D. Cal. 1995)).

Here, all of the factors weigh in favor of approving the award. First, solely as a consequence of the within action, Defendants will pay $15,000 for the benefit of class members. Second, Plaintiff has spent some time conferring with Class Counsel and providing factual background and supporting data. (July 29, 2013, Harris Decl., ¶6.) Third, he "undertook the financial risk that, in the event of a judgment in favor of Defendant[s] in this action, they could have been personally responsible for any costs awarded in favor of Defendant[s]." Vasquez v. Coast Valley Roofing, Inc., 266 F.R.D. 482, 491 (E.D. Cal. 2010). Indeed, incentive awards are particularly appropriate in employment class actions, where they help to alleviate the "stigma upon future employment opportunities for having initiated an action against a former employer." Campbell v. First Investors Corp., 2012 U.S. Dist. LEXIS 155549 at *21–22 (S.D. Cal. filed Oct. 29, 2012). Because the requested payment is *below* the range awarded in similar cases, see Smith, 2013 U.S. Dist. LEXIS 6049 at *17–18 (noting that incentive awards range from $25,000 to $50,000), they should be approved.

Pursuant to the terms of the Settlement Agreement, Class Counsel intend to apply for an award of attorney's fees in an amount not to exceed $5,000, *i.e.*, 33% of the Gross Settlement Fund, as well as an award of costs, which will not exceed $1,000. (July 29, 2013, Harris Decl. ¶9.) Principles of equity permit fees and costs to come from the fund as a whole, see, e.g., Boeing Co. v. Van Germet, 444 U.S. 472, 478 (1980) ("[T]this Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole. The common-fund doctrine reflects the traditional practice in courts of equity, and it stands as a well-recognized exception to the general principle that requires every litigant to bear his own attorney's fees. The doctrine rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense. Jurisdiction over the fund involved in the litigation allows a court to prevent this inequity

by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit.").

### *V. Notice to the Class*

The Settlement Agreement calls for the appointment of a Claims Administrator to deliver the Class Notice and Claim Form to the Class. (July 29, 2013, Harris Decl. Ex. 1, pp. 6-8.) The parties agreed that, subject to this Court's approval, Harris & Ruble will act as the Claims Administrator. (July 29, 2013, Harris Decl. ¶8.)

As noted above, the fees and costs associated with claims administration will be paid from the Gross Settlement Fund. The parties agreed that such fees and costs will not exceed $3,000. (July 29, 2013, Harris Decl. ¶8.) Based on this estimate, deducting claims-administration fees and costs from the Gross Settlement Fund will still enable the Plaintiff and the participating Class Members, if any, to be paid in full for their unpaid wages and liquidated damages under the FLSA.

The Class Notice to be delivered to Class Members includes the information required by Rule 23 of the Federal Rules of Civil Procedure. Specifically, the Class Notice describes the nature of the action, the definition of the Class, and the class-wide claims; it explains that Class Members may enter an appearance through an attorney and that the Court will exclude those Members requesting exclusion; and it specifies the time requirements and manner of requesting exclusion, as well as the binding effect of a class-wide judgment. (Fed. R. Civ. Proc. 23(c)(2)(B) (stating that "[t]he notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).").) Although Rule 23 does not require notices to inform class members of their objection rights, see Int'l Union v. Gen. Motors Corp., 497 F.3d 615, 630 (6th Cir. 2007), the Class Notice herein will explain that Class Members

may object (July 29, 2013, Harris Decl. Ex. 6.) Furthermore, (i) the Class Notice indicates the time and place of the hearing to consider final approval of the Settlement Agreement, (ii) it displays the address and telephone number of Class Counsel and the procedure for making inquiries, and (iii) it provides information regarding the fees to be paid to Class Counsel and the incentive awards to be paid to the named Plaintiffs. (July 29, 2013, Harris Decl. Ex. 6.) See William W Schwarzer, *et al.*, California Practice Guide: Federal Civil Procedure Before Trial ¶ 10:824 (The Rutter Group 2012) (specifying the content of settlement notice). In addition, the Class Notice explains the procedures for allocating the Settlement Fund to Class Members. (July 29, 2013, Harris Decl. Ex. 6).

Under the Settlement Agreement, the Claims Administrator will deliver the Class Notice, along with the Claim Form, to Class Members via first-class mail within seven days after receiving address information from Defendants.[3] Class Members shall have forty-five days from the date of mailing to submit (i) completed Claim Forms, (ii) requests for exclusion, and/or (iii) objections to the Claims Administrator. (July 29, 2013, Harris Decl. Ex. 1, ¶ 5.)

### *VI. Release Provisions and Opting Out*

If the Court grants final approval of the Settlement Agreement, then, in exchange for the consideration described above, Class Members will be deemed to have released Defendants from those claims that were or could have been asserted in the FAC stemming from the specific facts alleged therein. (July 29, 2013, Harris Decl. Ex. 1, ¶10.) If a Class Member opts out pursuant to the procedures outlined in the Class Notice, then he or she will not release any claims that he or she may have against either Defendant. In order to extinguish FLSA claims, Class Members are required to opt in to this case and they will receive additional consideration.

[3] Defendant MII will provide the Claims Administrator with a list of the last-known names, addresses, and social-security numbers of Class Members within five days of preliminary approval. (July 29, 2013, Harris Decl. Ex. 1, ¶ 5.)

## *VII. The Court Should Conditionally Certify the Class and Should Preliminarily Approve the Settlement Agreement*

### *A. Class Certification Is Warranted*

There is authority to the effect that a pre-certification settlement is subject to a somewhat higher level of scrutiny than one negotiated post-certification. See, e.g., Dunleavy v. Nadler, 213 F.3d 454, 458 (9th Cir. 2000). However, concerns about the rights of absent Class Members can be dispelled by the Court's review of the Settlement Agreement and by Rule 23's procedural protections.[4] Officers for Justice v. Civil Serv. Comm., 688 F.2d 615, 624–25 (9th Cir. 1982), cert. denied, 459 U.S. 1217 (1983). A trial court has wide discretion in certifying a class for settlement purposes and will be reversed "'only upon a strong showing that [its] decision was a clear abuse of discretion.'" Dunleavy, 213 F.3d at 461 (quoting Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1238 (9th Cir. 1998)).

Class actions are favored, and Rule 23 is to be given a broad, rather than a restrictive, interpretation in favor of maintaining class actions. Adames v. Mitsubishi Bank, Ltd., 133 F.R.D. 82, 88 (E.D.N.Y. 1989); Labbate-D'Alauro v. GC Servs. Ltd. P'ship, 168 F.R.D. 451, 454 (E.D.N.Y. 1996). Rule 23 contains four certification requirements: (i) The class must be so numerous "that joinder of all members is impracticable," (ii) there must be "questions of law or fact common to the class," (iii) the claims of the representative plaintiffs must be "typical of the claims of the class," and (iv) the class representatives must show that they "will fairly and adequately protect the interests of the class." Fed. R. Civ. Proc. 23(a).

[4] Plaintiffs note that their collective-action claim under the FLSA is not necessarily subject to Rule 23. However, "[b]ecause the standards for certifying an FLSA class and evaluating the fairness of an FLSA settlement are less stringent than those imposed by Rule 23," courts have found "the FLSA requisites satisfied by a showing that Rule 23 requirements have been met." Khanna v. Inter-Con Sec. Sys., Inc., 2012 U.S. Dist. LEXIS 137651 at *9 (E.D. Cal. filed Sept. 25, 2012). Accordingly, the following analysis—both with respect to class certification and preliminary approval—is made only under Rule 23.

Here, the numerosity requirement is met. Again, the total number of Class Members is several dozen, approximately sixty persons. (July 29, 2013, Harris Decl. ¶ 5.) Given that "courts will typically find the numerosity requirement satisfied when a class includes 40 or more members," Sibert v. TV Magic, Inc., 2012 U.S. Dist. LEXIS 118245 (C.D. Cal. filed Aug. 21, 2012) (citing Rannis v. Recchia, 380 Fed. Appx. 646, 651 (9th Cir. 2010), and given that common sense indicates that joinder of all Class Members would be "impracticable," the Class is sufficiently numerous to justify certification.

Likewise, the commonality requirement is met. In this regard, a plaintiff is *not* required to show that there is commonality on *every* factual and legal issue; instead, "for purposes of Rule 23(a)(2) '[e]ven a single [common] question' will do." Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2556 (2011) (brackets in original). See also Negrete v. Allianz Life Ins. Co. of N. Am., 287 F.R.D. 590, 602 (C.D. Cal. 2012) (explaining that, "[e]ven after Dukes, the commonality inquiry does not require plaintiffs to demonstrate the 'predominance' of common issues over individualized ones, nor the 'cohesion' of the class"). With respect to the present matter, there is considerable commonality among Class Members, as Defendants' hired the security officers to work together with respect to a single event. The legality of that policy can be determined on a class-wide basis only once rather than many separate times in individual suits brought by each Class Member. This issue, in fact, predominates over issues that affect only individual Class Members (for example, the individual overtime amounts owing to each Class Member on account of Defendants' alleged miscomputation). Moreover, even if it should turn out that the Class definition includes individuals who have not been injured or who do not wish to pursue claims, that is not a bar to certification. See Elliott v. ITT Corp., 150 F.R.D. 569, 575 (N.D. Ill. 1992). Cf. Joseph v. Gen. Motors Corp., 109 F.R.D. 635, 639–40 (D.C. Colo. 1986).

Plaintiff also meets the typicality requirement, and he is an adequate Representative Plaintiff. The fact-pattern for Plaintiff is similar, if not identical, to that

for other Class Members: Plaintiff and Class Members earned hourly wages, and they worked overtime, but their wages were not paid promptly. Plaintiff also has no conflict of interest with the Class, as he shares Class Members' likely desire to be paid promptly, in the future. (See July 29, 2013, Harris Decl., ¶ 6.) Additionally, Plaintiff is committed to pursuing the claims of the Class, and his motivation in pursuing this action has been to seek reimbursement for himself and the Class and to ensure that Defendants comply with wage-and-hour requirements. (See July 29, 2013, Harris Decl., ¶ 6.)

In addition to the above-described four requirements, this case must also meet one of the non-exclusive factors in Rule 23(b). Rule 23(b) authorizes class certification if a court determines that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. Proc. 23(b)(3). As noted with respect to the commonality requirement, the central issue in this case is the legality of Defendants' various wage and hour policies. The only individual determination, then, is the quantification of damages for each Class Member—and such an individual determination does not defeat class certification. See Yokoyama v. Midland Nat'l Life Ins. Co., 594 F.3d 1087, 1089 (9th Cir. 2010) (stating that "[t]he potential existence of individualized damage assessments . . . does not detract from the action's suitability for class certification," and explaining that "[o]ur court long ago observed that '[t]he amount of damages is invariably an individual question and does not defeat class action treatment'").

***B. The Settlement Meets the Requirements for Preliminary Approval***

If a proposed settlement appears to be the product of "serious, informed, non-collusive negotiations," and if it "has no obvious deficiencies," the court "should direct that notice be given to the class of a formal fairness hearing." Young v. Polo Retail, Inc., 2006 WL 3050861 at *5 (N.D. Cal. Oct. 25, 2006). The proposed Settlement Agreement satisfies these requirements.

***i. Settlement Negotiations Were Conducted at Arm's Length***

There is no doubt that the Settlement Agreement was reached through arm's length bargaining. As for the payments to be made to Class Members, the net dollar payments represent significant relief, particularly given the problems in proof inherent in demonstrating that Class Members were entitled to any recovery, at all. E.g., Brinker Rest. Corp. v. Superior Court, 53 Cal. 4th 1004, 1040 (2012) (holding that "[a]n employer's duty with respect to meal breaks under . . . section 512 . . . is an obligation to provide a meal period," which is satisfied if the employer "relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break," meaning that employer is not liable for meal-break violations if the employee voluntarily foregoes a break). In light of these issues, the parties ultimately agreed to a $15,000 settlement.

***ii. The Settlement Has No Obvious Deficiencies***

According to the Ninth Circuit:

> "Assessing a settlement proposal requires a district court to balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining a class-action status throughout the trial; the amount offered in the settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; . . . and the reaction of the class members to the proposed settlement."

Dunleavy, 213 F.3d at 458 (quoting Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998)) (ellipses in original). Certain factors may predominate in different contexts, and one factor may so strongly predominate that it alone provides a sufficient ground for approval. See Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1376 (9th Cir. 1993).

***a. The Strength of Plaintiffs' Case***

Although Plaintiff considers his unpaid wage claims to be strong, no case is certain of recovery. Moreover, under Brinker, Plaintiff faces a significant hurdle in

demonstrating that Class Members were required to work through their breaks instead of simply making the voluntary decision to forego a break. Such factors weigh in favor of approving the settlement.

***b. The Likely Duration of Further Litigation***

In most cases, "'unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.'" Nat'l Rural Telcomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 526 (C.D. Cal. 2004) (quoting 4 Alba Conte & Herbert Newberg, Newberg on Class Actions § 11:50 (4th ed. 2002) (hereinafter "Newberg")). Granting approval of the Settlement Agreement would create a Gross Settlement Fund that would quickly end this case. Because the putative Class has not yet been certified and because notice has not been sent out, the likely duration of further litigation might well be several years. Accordingly, this factor also weighs in favor of approving the settlement.

***c. The Risk of Maintaining Class-Action Status Through Trial***

Given the potential management issues noted above with respect to Plaintiffs' breaks claim, "there is no guarantee that th[e C]lass would not be decertified before or during trial." Rodriguez v. West Publ'g Corp., 2007 U.S. Dist. LEXIS 74767 at *29 (C.D. Cal. filed Sept. 10, 2007) (citing In re NASDAQ Market-Makers Antitrust Litig., 187 F.R.D. 465, 476 (S.D.N.Y. 1998)), rev'd on other grounds, 563 F.3d 948 (9th Cir. 2009). See also Rodriguez, 2007 U.S. Dist. LEXIS 74767 at *29 (stating that, "if 'insurmountable management problems were to develop at any point, class certification can be revisited at any time under Fed. R. Civ. P. 23(c)(1)'") (quoting In re NASDAQ Market-Makers Antitrust Litig., 187 F.R.D. at 476). As recently explained by the Central District, there is often "no way of determining on a classwide basis whether [missed breaks] were violations . . . or whether individual class members voluntarily opted to start their meal break late, cut it short, or not take a break at all." Ordonez v. Radio Shack, Inc., 2013 U.S. Dist. LEXIS 7868 at *22 (C.D. Cal. filed Jan. 17, 2013). This factor thus weighs in favor of approving the settlement.

***d. The Settlement Amount Offered***

The Gross Settlement Payment is $15,000, which facilitates the anticipated payment of 100% of Plaintiffs' claims. This represents a more-than-reasonable resolution of this case. See Rodriguez, 2007 U.S. Dist. LEXIS 74767 at *30 (noting that a "settlement amount representing 33% of the maximum possible recovery was well within a reasonable range when compared with recovery percentages in other class action settlements") (citing In re Warfarin, 212 F.R.D. at 257–58). Consequently, this factor weighs in favor of approval.

***e. The Extent of Discovery and Stage of the Proceedings***

Class Counsel executed the Settlement Agreement after having had the opportunity to review informal discovery, "'enabl[ing them] . . . to act intelligently'" in deciding to settle. Rodriguez, 2007 U.S. Dist. LEXIS 74767 at *30 (quoting Newberg § 11:41).

***f. The Experience and Views of Counsel***

As reflected in the Declaration of Alan Harris filed herewith, Class Counsel has substantial experience in prosecuting class actions, including wage-and-hour actions. (See July 29, 2013, Harris Decl. ¶ 10.) Class Counsel is of the opinion that the Settlement Agreement represents an excellent bargain, given the inherent risks, hazards, and expenses of carrying the case through trial. As the Central District has explained, this weighs strongly in favor of approval. See Rodriguez, 2007 U.S. Dist. LEXIS 74767 at *32–33 (explaining that "the trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties"; that, "[h]ere, [c]lass [c]ounsel have considerable experience in litigating . . . class actions[] and other complex litigation"; and that "[t]his factor weighs in favor of approving the [s]ettlement").

***g. The Reaction of Class Members to the Proposed Settlement***

The reaction of Class Members to the Settlement Agreement cannot, of course, be known until preliminary approval is given, Class Notice is delivered, and responses are received.

***V. Conclusion***

Under the Settlement Agreement, Class Members have either been paid and executed releases or will receive a substantial payment. This represents a successful result. The Court should therefore grant conditional certification of the Class and should preliminarily approve the Settlement Agreement.

Dated: July 29, 2013

HARRIS & RUBLE

/s/ *Alan Harris*
Alan Harris
*Attorneys for Plaintiff*