Alan Harris (SBN 146079)
HARRIS & RUBLE
6424 Santa Monica Boulevard
Los Angeles, California 90038
Telephone:  (323) 962-3777
Facsimile:  (323) 962-3004
aharris@harrisandruble.com
dzelenski@harrisandruble.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDMOND VALENZUELA, individually and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>        v.<br><br>MANCINI INTERNATIONAL, INC., WILLIAM MANCINI, MOTION PICTURE AND TELEVISION FUND, and DOES 1 to 20,<br><br>                Defendants. | Case No. CV-12-09068 DDP (PLAx)<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEY'S FEES AND REIMBURSEMENT OF COSTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:  December 9, 2013<br>Time:  10:00 a.m.<br>Place:  Ctrm. 3, 2nd Floor<br>          312 N. Spring Street<br>          Los Angeles, CA 90012<br><br>*Assigned to Hon. Dean D. Pregerson*<br><br>Complaint filed Aug. 15, 2012<br>Action Removed Oct. 22, 2012 |

**PLEASE TAKE NOTICE** that, on December 9, 2013, at 10:00 a.m., in Courtroom 3 of the above-entitled Court located at 312 North Spring Street, Los Angeles, California 90012—or at such other date, time, or place as the Court may designate— Plaintiff will move pursuant to Federal Rule of Civil Procedure 23(h) for an order awarding $5,000 in attorney's fees, $1,000 in incurred litigation costs from the common-fund settlement reached in the above-captioned action and $3,000 for the costs of administration.  The Motion will be made and based upon this Notice of Motion; the Memorandum of Points and Authorities appended hereto; the Declaration of Alan Harris filed herewith; all of the pleadings, papers, and documents contained in the file of the within action; and such further evidence and argument as may be presented at or before the hearing on the Motion.

The Motion is made pursuant to the Order granting preliminary approval of the settlement.[1]  The required Local Rule 7-3 meet-and-confer took place commencing on January 17, 2013 and on various dates thereafter.

Dated: September 30, 2013

HARRIS & RUBLE

             /s/ *Alan Harris*

Alan Harris
*Attorneys for Plaintiff*

---

[1] The Order also sets the hearing for final approval of the settlement for December 9, 2013.  Plaintiff will lodge a single, consolidated Proposed Order granting final approval and approving the present fee-and-cost request when he files the Motion for final approval.

# *TABLE OF CONTENTS*

I.    Introduction.........................................................................................1

II.   Summary of the Litigation's Claims and of the Relevant Procedural
      History. ..............................................................................................1

      A.    The Initial Complaint and the Execution of the Settlement
            Agreement. ...............................................................................1

      B.    The First Amended Complaint........................................................2

      C.    The Specific Claims for Relief Alleged in this Action. .......................2

            1.    Plaintiff's Overtime Claim..................................................2

            2.    Plaintiff's  Missed-Break Claims..........................................3

            3.    Plaintiff's Derivative Claims. .............................................4

      D.    The Order Granting Preliminary Settlement Approval........................6

III.  Summary of the Settlement Agreement. .................................................6

IV.   Argument. ..........................................................................................6

      A.    Class Counsel Are Entitled to Recover Fees from the Common
            Fund.........................................................................................6

      B.    Class Counsel's Requested Fees Fall Within the Ninth Circuit's
            "Benchmarks." ..........................................................................8

            1.    The Results Obtained and the Degree of Risk Assumed..........9

            2.    The "Market Rate" for Class Counsel's Services...................11

            3.    Class Counsel's Contingent-Based Representation................11

            4.    Class Counsel's Skill and the Complexity of the Issues. ........12

            5.    The Reaction of the Class. .................................................13

      C.    The Lodestar "Crosscheck" Confirms that the Requested Fees
            Are Reasonable........................................................................13

      D.    Class Counsel's Requested Expense Reimbursement Is Proper........14

V.    Conclusion. ......................................................................................15

# *TABLE OF AUTHORITIES*

## CASES

Bluetooth Headset Prods. Litig.,,
    654 F.3d 936 (9th Cir. 2011) .........................................................................7

Bond v. Ferguson,,
    2011 U.S. Dist. LEXIS 70390  (N.D. Cal. filed June 30, 2011) ......................8

Brinker Restaurant Corp. v. Superior Court,
    53 Cal. 4th 1004 (2012) ..............................................................................10

Carter v. Anderson Merchandisers, LP,,
    2010 U.S. Dist. LEXIS 55629  (C.D. Cal. filed May 10, 2010)......................12

Cicero v. DirecTV, Inc.,,
    2010 U.S. Dist. LEXIS 86920  (C.D. Cal. filed July 27, 2010) ......................11

Clark v. Payless Shoesource, Inc.,,
    2012 U.S. Dist. LEXIS 105187 (W.D. Wash. filed July 27, 2012).................7

Cortez v. Purolator Air Filtration Prods. Co.,
    23 Cal. 4th 163 (2000) ..................................................................................5

Craft v. County of San Bernardino,
    624 F. Supp. 2d 1113 (C.D. Cal. 2008) ........................................................11

Franco v. Ruiz Food Prods., Inc.,,
    2012 U.S. Dist. LEXIS 169057  (E.D. Cal. filed Nov. 27, 2012) . 11, 12, 13, 14

Garcia v. Gordon Trucking, Inc.,,
    2012 U.S. Dist. LEXIS 160052 (E.D. Cal. filed Oct. 31, 2012) ...................12

Gardner v. GC Servs., LP,,
    2012 U.S. Dist. LEXIS 47034  (S.D. Cal. filed Apr. 2, 2012) ........................12

Hanlon v. Chrysler Corp.,,
    150 F.3d 1011 (9th Cir. 1997) .......................................................................7

Harris v. Investors' Business Daily, Inc.,
    138 Cal. App. 4th 28 (2006) ...........................................................................5

Heritage Bond Litig.,,
    2005 U.S. Dist. LEXIS 13555  (C.D. Cal. filed June 10, 2005)..................7, 13

Hopkins v. Stryker Sales Corp.,,
    2013 U.S. Dist. LEXIS 16939  (N.D. Cal. filed Feb. 6, 2013)..................10, 12

In re Activision Sec. Litig.,
    723 F. Supp. 1373 (1989) ..............................................................................9

In re ATM Fee Antitrust Litig.,,
    686 F.3d 741 (9th Cir. 2011) .......................................................................14

In re Mercury Interactive Corp. Sec. Litig.,
    618 F.3d 988 (9th Cir. 2010) .......................................................................13

In re Omnivision Techs., Inc.,
    559 F. Supp. 2d 1036 (N.D. Cal. 2007).......................................................13

Jones v. Spherion Staffing LLC,,
    2012 U.S. Dist. LEXIS 112396 (C.D. Cal. filed Aug. 7, 2012) ......................10

Linerboard Antitrust Litig.,,
    2004 U.S. Dist. LEXIS 10532  (E.D. Pa. filed June 2, 2004) .......................14

Morales v. Stevco, Inc.,
    2013 U.S. Dist. LEXIS 41799  (E.D. Cal. filed Mar. 25, 2013) ..........11, 12, 13

Odrick v. UnionBanCal Corp.,
    2012 U.S. Dist. LEXIS 171413 (N.D. Cal. filed Dec. 3, 2012) ......................14

Ordonez v. Radio Shack, Inc.,
    2013 U.S. Dist. LEXIS 7868  (C.D. Cal. filed Jan. 17, 2013).........................10

Paul, Johnson, Alston & Hunt v. Graulty,
    886 F.2d 286, 272 (9th Cir. 1989) ...................................................................8

Petition of Hill,
    775 F.2d 1037 (9th Cir. 1985) ........................................................................8

Six (6) Mexican Workers v. Arizona Citrus Growers,
    904 F.2d 1301 (9th Cir. 1990) ........................................................................8

Staton v. Boeing Co.,
    327 F.3d 938 ((9th Cir. 2003) .............................................................7, 8, 9, 14

Thieriot v. Celtic Ins. Co.,
    2011 U.S. Dist. LEXIS 44852  (N.D. Cal. filed Apr. 21, 2011) ....................12

Torrisi v. Tucson Elec. Power Co.,
    8 F.3d 1370 (9th Cir. 1993) ............................................................................8

Vizcaino v. Microsoft Corp.,
    290 F.3d 1043 (9th Cir. 2002) ................................................................ passim

Wash. Pub. Power Supply Sys. Sec. Litig.,
    19 F.3d 1291 (9th Cir. 1994) ........................................................................14

**STATUTES**

29 U.S.C. § 207(a) ...........................................................................................3

Cal. Bus. & Prof. Code § 17200, et seq. .......................................................2, 5

Cal. Bus. & Prof. Code § 17203 .......................................................................5

Cal. Lab. Code § 201 .....................................................................................4, 5

Cal. Lab. Code § 202 ........................................................................................5

Cal. Lab. Code § 203 ......................................................................................10

Cal. Lab. Code § 226 ...................................................................................4, 10

Cal. Lab. Code § 226.7 .....................................................................................4

Cal. Lab. Code § 510 .....................................................................................2, 3

Cal. Lab. Code § 512 ........................................................................................3

Cal. Lab. Code § 2699 ......................................................................................6

**RULES**

Fed. R. Civ. Proc. 23 ................................................................................2, 6, 7

**REGULATIONS**

8 Cal. Code Regs. § 11030 subsec. 11(A) .......................................................3

8 Cal. Code Regs. § 11030 subsec. 12(A) .......................................................4

### *MEMORANDUM OF POINTS AND AUTHORITIES*

**I.   *Introduction.***

On August 27, 2013, the Court preliminarily approved a Settlement Agreement executed by Plaintiff, on the one hand, and Defendants MANCINI INTERNATIONAL, INC., WILLIAM MANCINI, ant the MOTION PICTURE AND TELEVISION FUND, on the other hand.  The Settlement Agreement seeks to resolve Plaintiff's class- and collective-action claims against Defendants for violations of (a) state and federal overtime laws and (b) California meal-and-rest-break requirements, as well as (c) derivative claims stemming therefrom.  Under the $15,000 common-fund settlement reached by the parties, with regard to the charity event involved in this case, Defendants will pay each Class Member a small portion of his or her claim in connection with the charity event for the Motion Picture & Television Fund involved in this case. Specifically, the $15,000 will be divided as follows:

| | | |
|---|---|---|
| Class Claims | $ | 4,000 |
| Claims Administration | $ | 3,000 |
| Attorney's Fees | $ | 5,000 |
| Attorney's Costs | $ | 1,000 |
| Representation Fee | $ | 2,000 |

Accordingly, the gross recovery per Class Member will be at least $40.

Class Counsel now seek attorney's fees of $5,000 from the common fund, equal to 33% of the fund's face value, and $1,000 as reimbursement for incurred litigation expenses.  As explained below, this award is within the range of the "benchmarks" established by the Ninth Circuit for small common-fund cases.  Indeed, the total fees requested amount to substantially *less* than Class Counsel's lodestar.  Class Counsel's fee-and-cost request should therefore be approved as fair, reasonable, and adequate.

**II.   *Summary of the Litigation's Claims and of the Relevant Procedural History.***

   **A.   *The Initial Complaint and the Execution of the Settlement Agreement.***

Plaintiff commenced this action in Los Angeles Superior Court on August 9, 2012.

(ECF Doc. 1, October 22, 2012, Notice of Removal, 6:2-4.)  Plaintiff's Superior Court Complaint alleged that Defendants had failed to provide individuals employed in California with proper overtime under section 510 of the California Labor Code. Similarly, the Complaint alleged that Defendants had failed to provide individuals employed with proper overtime under section 207 of the federal Fair Labor Standards Act ("FLSA").  The Complaint also alleged that Defendants had failed to provide California employees with proper meal breaks under sections 226.7 and 512 of the Labor Code, failed to provide California employees with adequate pay stubs under section 226 of the Labor Code, and failed to provide timely final paychecks to former California employees under sections 201 through 203 of the Labor Code.  In addition, the Complaint alleged a derivative unfair-competition claim under section 17200 *et seq.* of the California Business and Professions Code stemming from Defendants's alleged failures to pay proper overtime and provide proper breaks.  (ECF Doc. 1, October 22, 2012, Notice of Removal at 6:4-12.)

After engaging in informal discovery involving the exchange of documents, in January of 2013, the parties agreed to a settlement of the case. The long-form class-wide Settlement Agreement was executed by the parties in April of 2013.  (see September 30, 2013, Decl. of Alan Harris in Supp. of Pls.' Mot. for Award of Att'ys Fees & Reimbursement of Costs ("September 30, 2013, Harris Decl.") ¶¶ 1, 4).

### B.    The First Amended Complaint.

Plaintiff's First Amended Complaint was filed on November 16, 2012.  The Complaint was amended to add a claim under the California Labor Code Private Attorneys General Act ("PAGA").

### C.    The Specific Claims for Relief Alleged in this Action.

#### 1.    Plaintiff's Overtime Claim.

As in the original Complaint, Plaintiff allege in the First Amended Complaint that Defendant Mancini International, Inc. ("MII") failed to provide proper overtime to hourly-paid employees.  (November 6, 2012, First Am. Compl. ¶¶ 11-18.)  Under

1   California law, "[a]ny work in excess of eight hours in one workday and any work in

2   excess of 40 hours in any one workweek . . . shall be compensated at the rate of no less

3   than one and one-half times the regular rate of pay for an employee," and "[a]ny work in

4   excess of 12 hours in one day shall be compensated at the rate of no less than twice the

5   regular rate of pay for an employee."  Cal. Lab. Code § 510(a).  A similar rule applies

6   under the FLSA.  See 29 U.S.C. § 207(a) (stating that "no employer shall employ any of

7   his employees . . . for a workweek longer than forty hours unless such employee receives

8   compensation for his employment in excess of the hours above specified at a rate of not

9   less than one and one-half times the regular rate at which he is employed").

10      Plaintiff's  unpaid-overtime claim stems from the fact that Defendants' hourly-paid

11   employees worked long hours in connection with the event, Plaintiff Valenzuela working

12   as a security officer for the Party for two of the three shifts—set watch and the event—

13   from on or about February 24, 2012, to on or about February 26, 2012.  Valenzuela

14   worked twelve continuous hours on February 24, 2012, on "set watch."  Valenzuela

15   worked nineteen continuous hours from February 25, 2012, to February 26, 2012, on the

16   "event" shift.   On or about February 26, 2012, Valenzuela was discharged.  To date,

17   despite repeated requests to MII, Mancini, and MPTF, Valenzuela has not been paid for

18   any of his thirty-one hours of work.   All other Class Members were paid in 2012, albeit

19   in tardy fashion.  (September 30, 2013, Harris Decl. ¶ 5.)

20            **2.    *Plaintiff's Missed-Break Claims.***

21      In addition to this central overtime claim, Plaintiff's First Amended Complaint

22   alleges that Defendants failed to provide proper meal and rest breaks to the employees.

23   (November 6, 2012, First Am. Compl. ¶¶ 24-28.)  The relevant Industrial Welfare

24   Commission ("IWC") wage order provides that no employer shall employ any person for

25   a work period of more than five (5) hours without a meal period of not less than 30

26   minutes.  See also Cal. Lab. Code § 512(a) (stating that "[a]n employer may not employ

27   an employee for a work period of more than five hours per day without providing the

28   employee with a meal period of not less than 30 minutes").  The relevant wage order also

1  provides that every employer shall authorize and permit all employees to take ten-minute

2  rest periods for every four hours worked, or, after six hours, major fraction thereof.

3  Under the Labor Code, "[i]f an employer fails to provide an employee a meal period or

4  rest period in accordance with an applicable order of the [IWC], the employer shall pay

5  the employee one additional hour of pay at the employee's regular rate of compensation

6  for each work day that the meal or rest period [wa]s not provided."  Cal. Lab. Code §

7  226.7(b).  As alleged in the First Amended Complaint, Defendants operated without

8  properly providing the employees with their statutorily required meal and rest breaks.

9  (November 6, 2012, First Am. Compl. ¶¶41-42, 60-65.)  They are therefore entitled to

10  additional wages under section 226.7.

11  ### 3.    *Plaintiff's Derivative Claims.*

12  Plaintiff's First Amended Complaint also asserts three derivative class-wide claims

13  stemming from Defendants' alleged failure to pay proper overtime and provide proper

14  breaks to California employees.  The first such claim is a pay-stub claim under section

15  226 of the Labor Code.  Section 226 requires employers to provide their employees with

16  "accurate itemized statement[s]" accompanying their paychecks, listing, *inter alia*, "gross

17  wages earned," "net wages earned," "total hours worked," and "all applicable hourly

18  rates in effect during the pay period."  Cal. Lab. Code § 226(a).  If "[a]n employee

19  suffer[s] injury as a result of a knowing and intentional failure by an employer" to

20  provide such information, the employee "is entitled to recover the greater of all actual

21  damages" or a statutory damage award of up to $4,000.  Id. § 226(e).  Plaintiff contends

22  that the alleged failure to list these wages on pay stubs entitles employees to the damages

23  set forth in section 226.  (November 6, 2012, First Am. Compl. ¶ 57-59.)

24  Plaintiff's second derivative claim is for "continuing wages" under sections 201

25  through 203 of the Labor Code.  Section 201 states that, "[i]f an employer discharges an

26  employee, the wages earned and unpaid at the time of discharge are due and payable

27  immediately."  Cal. Lab. Code § 201(a).  Similarly, if an employee quits, "his or her

28  wages shall become due and payable not later than 72 hours thereafter, unless the

1   employee has given 72 hours previous notice of his or her intention to quit, in which case

2   the employee is entitled to his or her wages at the time of quitting." Id. § 202(a).  If an

3   employer "willfully fails to pay" former employees within the time limits set by sections

4   201 or 202, whichever the case may be, then "the wages of the employee[s] shall

5   continue as a penalty from the due date thereof at the same rate until paid or until an

6   action therefor is commenced," up to a maximum of thirty days.  Id. § 203(a).  Plaintiff is

7   alleged to have not been paid all overtime wages as detailed above, entitling him to

8   continuing wages under section 203.  The same goes for all other similarly situated

9   hourly-paid employees.  (November 6, 2012, First Am. Compl. ¶¶ 66-68.)

10          Plaintiff's third derivative claim is for unfair competition under Business and

11  Professions Code section 17200 et seq.  (November 6, 2012, First Am. Compl. ¶¶72-83.)

12  Section 17200 defines "unfair competition" as "any unlawful, unfair or fraudulent

13  business act or practice."  Cal. Bus. & Prof. Code § 17200.  In effect, "[a]n action based

14  on this state statute 'borrows' violations of other laws when committed pursuant to

15  business activity."  Harris v. Investors' Business Daily, Inc., 138 Cal. App. 4th 28, 32–33

16  (2006).  Because unpaid wages are recoverable under section 17200 et seq., see Cortez v.

17  Purolator Air Filtration Prods. Co., 23 Cal. 4th 163, 177–78 (2000), Plaintiff may seek

18  restitution of unpaid overtime and missed-break wages for themselves and all similarly

19  situated employees under the unfair-competition law simultaneously with their claims

20  under the Labor Code, see Cal. Bus. & Prof. Code § 17203 (stating that a "court may

21  make such orders . . . as may be necessary to restore to any person in interest any

22  money . . . which may have been acquired by means of such unfair competition").

23          Finally, as noted above, Plaintiff's First Amended Complaint asserts a civil-penalty

24  claim under the Labor Code Private Attorneys General Act ("LCPAGA"), section 2698 et

25  seq. of the Labor Code, for the alleged violations of California law.  (November 6, 2012,

26  First Am. Compl. ¶¶ 84-88.)  The LCPAGA permits "an aggrieved employee" to seek

27  civil penalties "on behalf of himself or herself and other current or former employees" for

28  violations of sections 201, 202, 226, 510, and 512 of the Labor Code, which penalties are

1   to be split between the aggrieved employees and the California Labor and Workforce

2   Development Agency.  See Cal. Lab. Code § 2699(a), (i).

3       **D.     The Order Granting Preliminary Settlement Approval.**

4           On July 29, 2013, Plaintiff filed his Motion for preliminary settlement approval of

5   the claims alleged in the First Amended Complaint.  (See generally, July 29, 2013, Notice

6   of Mot. & Mot. for Preliminary Approval of Class-Action Settlement & Conditional

7   Certification of Settlement Class, ECF Doc. 27.)  The Court granted that Motion on

8   August 27, 2013, conditionally certifying the Class defined in the First Amended

9   Complaint (August 27, 2013, Order Granting Plaintiff's Mot. for Preliminary Approval of

10  Class-Action Settlement & Conditional Certification of Settlement Class.)

11  **III.   Summary of the Settlement Agreement.**

12          There are a total of some 100 Class Members.  (September 30, 2013, Harris Decl.

13  ¶ 8.)  Pursuant to the Settlement Agreement's terms, Defendants will pay $15,000 in cash

14  for the benefit of the Class.  The $15,000 Settlement Amount constitutes the Gross

15  Settlement Fund.  (September 30, 2013, Harris Decl. Ex. 1.)  The Gross Settlement Fund

16  will be used to pay the costs of claims administration, as well as to pay attorney's fees

17  and costs to Class Counsel, all as approved by the Court.[2]   By requesting $5,000 in fees

18  (equal to 33.3% of the Gross Settlement Fund) and only $3,000 in costs, at least $4,000

19  will remain for distribution to the Class.  In other words, approving Class Counsel's fee-

20  and-cost request will leave more than enough in the common fund to pay Class Members

21  at least $40 each.

22  **IV.   Argument.**

23      **A.     Class Counsel Are Entitled to Recover Fees from the Common Fund.**

24          Federal Rule of Civil Procedure 23 provides that, "[i]n a certified class action, the

25  _____

26          [2] Both attorney's fees and claims-administration expenses constitute benefits to the
    Class.  See Boeing Co. v. Van Germet, 444 U.S. 472, 478 (1980) (explaining that
27  attorney's fees are properly considered a class benefit, as "persons who obtain the benefit
    of a lawsuit without contributing to its costs are unjustly enriched at the successful
28  litigant's expense"); Staton v. Boeing Co., 327 F.3d 938, 975 (9th Cir. 2003) (stating that
    "[t]he post-settlement cost of providing notice to the class can reasonably be considered a
    benefit to the class").

court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. Proc. 23(h).  Rule 23(h) applies to requests for attorney's fees and costs for settled class actions.  See Staton, 327 F.3d at 964 (explaining that "[a]ttorneys' fees provisions included in proposed class action agreements are, like every other aspect of such agreements, subject to the determination whether the settlement is 'fundamentally fair, adequate and reasonable'") (citing Fed. R. Civ. Proc. 23(e)).

In analyzing Rule 23(h) fee requests, courts "'have an independent obligation to ensure that the award, like the settlement itself, is reasonable[] even if the parties have already agreed to an amount.'"  Greko v. Diesel U.S.A., Inc., 2013 U.S. Dist. LEXIS 60114 at *22–23 (N.D. Cal. filed Apr. 26, 2013) (quoting In re Bluetooth Headset Prods. Litig., 654 F.3d 936, 941 (9th Cir. 2011)).  For purposes of determining a reasonable fee, "'courts have discretion to employ either the lodestar method or the percentage-of-recovery method.'"  Greko, 2013 U.S. Dist. LEXIS 60114 at *23 (quoting In re Bluetooth Headset Prods. Litig., 654 F.3d at 942).  Generally speaking, though, "[t]he lodestar method is . . . preferable when calculating statutory attorney fees, whereas the percentage-of-recovery approach is appropriate when the fees will be drawn from a common fund."  Clark v. Payless Shoesource, Inc., 2012 U.S. Dist. LEXIS 105187 at *3–4 (W.D. Wash. filed July 27, 2012) (citing In re Bluetooth Headset Prods. Litig., 654 F.3d at 941).  See also In re Heritage Bond Litig., 2005 U.S. Dist. LEXIS 13555 at *60 (C.D. Cal. filed June 10, 2005) (explaining that the lodestar method is used in place of the percentage method when "the determination of [a] settlement's net value is too difficult") (citing Hanlon v. Chrysler Corp., 150 F.3d 1011, 1029 (9th Cir. 1997)).  The percentage method is also particularly suited for common-fund settlements achieved at a procedurally early litigation stage.  See Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1050 & n. 5 (9th Cir. 2002) (stating that "the primary basis of the fee award remains the percentage method" and that, although the lodestar can be used as a "crosscheck of the percentage method," it should not "imply that class counsel should necessarily receive a

1   lesser fee for settling a case quickly"). Cf. Torrisi v. Tucson Elec. Power Co., 8 F.3d

2   1370, 1376 (9th Cir. 1993) (explaining that the percentage analysis should be "replaced

3   by a lodestar calculation[] when special circumstances indicate that the percentage

4   recovery would be either too small or too large").

5       As explained by the Ninth Circuit, a "common fund" exists "when (1) the class of

6   beneficiaries is sufficiently identifiable, (2) the benefits can be accurately traced, and (3)

7   the fee can be shifted with some exactitude to those benefiting." In re Petition of Hill,

8   775 F.2d 1037, 1041 (9th Cir. 1985).  According to the Supreme Court, "the[se] criteria

9   are satisfied when each member of a certified class has an undisputed and mathematically

10  ascertainable claim to part of a lump-sum [amount] recovered on his [or her] behalf."

11  Boeing Co., 444 U.S. at 479.  Here, the $15,000 Gross Settlement Fund is a common

12  fund, as each Class Member will be entitled to a modest payment, in recognition of

13  Defendants' delay in making their payroll.  Accordingly, the Court should apply the

14  percentage-of-recovery approach when setting the amount of Class Counsel's fee.[3]  As

15  explained below, because Class Counsel's requested fees within the "benchmarks"

16  adopted by the Ninth Circuit—indeed, the requested fees are well less than Class

17  Counsel's lodestar—the Motion should be granted.

18      **B.    *Class Counsel's Requested Fees Fall Within the Ninth Circuit's***

19          ***"Benchmarks."***

20      The Ninth Circuit has explained that "25 percent of the fund [i]s the 'benchmark'

21  award that should be given in common fund cases." Six (6) Mexican Workers v. Arizona

22  Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990) (citing Paul, Johnson, Alston &

23  Hunt v. Graulty, 886 F.2d 286, 272 (9th Cir. 1989)).  That said, "the exact percentage

24  varies depending on the facts of the case, and in 'most common fund cases, the award

25  *exceeds* that benchmark.'" Bond v. Ferguson, 2011 U.S. Dist. LEXIS 70390 at *25 (N.D.

26  Cal. filed June 30, 2011) (quoting Knight v. Red Door Salons, Inc., 2009 U.S. Dist.

27  _____

28      [3] In any event, as explained below in Section IV.C., *infra*, Class Counsel's requested
    fee is also appropriate under the lodestar analysis.

LEXIS 1149 at *17 (E.D. Cal. filed Feb. 2, 2009)) (emphasis supplied).  <u>See also</u> <u>In re</u>
<u>Activision Sec. Litig.</u>, 723 F. Supp. 1373, 1377–78 (N.D. Cal. 1989) (stating that "*nearly*
*all* common fund awards range around 30%") (emphasis supplied).  Here, Class Counsel
are requesting only $5,000 in fees, which amounts to only 33.3% of the Gross Settlement
Fund.  This is fundamentally fair, reasonable, and adequate given the circumstances of
this case.

When determining what particular percentage—whether the benchmark; a higher
percentage, as is often the case, or a lower figure, as requested here—is fair, reasonable,
and adequate, a court must "take into account all of the circumstances of the case."
<u>Vizcaino</u>, 290 F.3d at 1048.  According to <u>Vizcaino</u>, relevant circumstances—or
"factors"—include "(1) whether counsel achieved exceptional results; (2) the degree of
risk assumed by counsel; (3) whether counsel's performance generated benefits beyond
the cash settlement fund; (4) whether the fee lies above or below the market rate; and (5)
the length of time counsel represented the class on a contingency basis."  <u>In re Nuvelo</u>
<u>Sec. Litig.</u>, 2011 U.S. Dist. LEXIS 72260 at *5 (N.D. Cal. filed July 6, 2011) (citing
<u>Vizcaino</u>, 290 F.3d at 1048–50).  Additional factors include "(6) counsel's experience
and skill, (7) the complexity of the issues, [and] (8) the reaction of the class."[4]  <u>In re</u>
<u>Nuvelo Sec. Litig.</u>, 2011 U.S. Dist. LEXIS 72260 at *5–6 (citing <u>In re Heritage Bond</u>
<u>Litig.</u>, 2005 U.S. Dist. LEXIS 13555 at *60).  Here, each of these factors weighs in favor
of awarding more than the benchmark level of fees.

### *1.    The Results Obtained and the Degree of Risk Assumed.*

The $15,000 settlement is a logical result obtained in the face of significant risk
and the charitable nature of the underlying event for which security services were
provided.  Again, Class Members will receive a payment under the settlement for claims
that are arguably susceptible to numerous substantive and procedural defenses.  As to
Plaintiff's  missed-break claim, for instance, there is a significant question as to whether

---

[4] A final factor—"comparison with counsel's lodestar," <u>In re Nuvelo Sec. Litig.</u>, 2011
U.S. Dist. LEXIS 72260 at *6 (citing <u>In re Heritage Bond Litig.</u>, 2005 U.S. Dist. LEXIS
13555 at *60)—is addressed in Section IV.C., *infra*.

Plaintiff will be able to demonstrate class-wide liability in light of the California Supreme Court's decision in <u>Brinker Restaurant Corp. v. Superior Court</u>, 53 Cal. 4th 1004 (2012). According to <u>Brinker Restaurant Corp.</u>, "[a]n employer's duty . . . under [the California Labor Code] is an obligation [only] to provide a meal period," which is satisfied if the employer "relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break." <u>Brinker Rest. Corp.</u>, 53 Cal. 4th at 1040. This means that an employer is not liable for meal-break violations if the employee voluntarily foregoes a break. As recently explained by the Central District of California, there is often "no way of determining on a classwide basis whether [missed breaks] were violations . . . or whether individual class members voluntarily opted to start their meal break late, cut it short, or not take a break at all." <u>Ordonez v. Radio Shack, Inc.</u>, 2013 U.S. Dist. LEXIS 7868 at *22 (C.D. Cal. filed Jan. 17, 2013). Even if Plaintiff could ultimately demonstrate class-wide liability for their non-overtime claims, recent authority holds that their derivative allegations concerning noncompliant pay stubs and continuing wages may fail. <u>See Jones v. Spherion Staffing LLC</u>, 2012 U.S. Dist. LEXIS 112396 at *21–26 (C.D. Cal. filed Aug. 7, 2012) (explaining that, because a missed-break lawsuit fundamentally asserts a claim that an employer failed to provide proper breaks instead of a claim that an employer failed to provide wages *per se*, there is no derivative violation of Labor Code sections 226 or 203).

Adding to the risk is the fact that Class Counsel undertook this litigation on a contingent-fee basis, requiring them to shoulder not only the cost of attorney and paralegal time, but all of the costs of over a year of litigation. <u>See Hopkins v. Stryker Sales Corp.</u>, 2013 U.S. Dist. LEXIS 16939 at *8 (N.D. Cal. filed Feb. 6, 2013) (in awarding more than the 25% benchmark, explaining that "[c]lass [c]ounsel took a significant risk investing in this case" because it "was conducted on an entirely contingent fee basis against a well-represented [d]efendant" and because [a]ll of the financial risk of litigation was therefore assumed by [c]lass [c]ounsel, whose fee

1  arrangement with [p]laintiffs required [c]lass [c]ounsel to bear all of the costs of litigation

2  and the costs of attorney and paralegal time"); <u>Franco v. Ruiz Food Prods., Inc.</u>, 2012

3  U.S. Dist. LEXIS 169057 at *46 (E.D. Cal. filed Nov. 27, 2012) (stating that "an award

4  of *one-third* of the common fund as attorneys' fees has been found appropriate" when an

5  "action [i]s undertaken on a contingency fee basis and [when], as such, [c]lass [c]ounsel

6  invest[] time, effort, and money with no guarantee of recovery") (emphasis supplied).

### 2.    The "Market Rate" for Class Counsel's Services.

8  Class Counsel's fee request within the range of a "market rate" for a settlement of

9  this size.  The market-rate factor concerns "'the range of fee awards out of common funds

10  of comparable size.'"  <u>Morales v. Stevco, Inc.</u>, 2013 U.S. Dist. LEXIS 41799 at *10

11  (E.D. Cal. filed Mar. 25, 2013) (quoting <u>Vizcaino</u>, 290 F.3d at 1050).  <u>See</u> <u>also</u> <u>In re</u>

12  <u>Nuvelo Sec. Litig.</u>, 2011 U.S. Dist. LEXIS 72260 at *7–8 (in analyzing the percentage

13  rate requested relative to the market rate, finding that "30% reasonably compares to other

14  awards for [settlements of the same size]").  According to Central District, "25% is

15  *substantially below* the average class fund fee nationally," and "[c]ases of under $10

16  [m]illion will often result in fees *above* 25%."  <u>Craft v. County of San Bernardino</u>, 624 F.

17  Supp. 2d 1113, 1125 (C.D. Cal. 2008) (emphasis supplied) (citing a study by the Federal

18  Judicial Center "of all class actions resolved or settled over a four-year period," which

19  study "found a median percentage recovery range of 27–30%").  <u>See</u> <u>also</u> <u>Cicero v.</u>

20  <u>DirecTV, Inc.</u>, 2010 U.S. Dist. LEXIS 86920 at *17 (C.D. Cal. filed July 27, 2010)

21  (explaining that "20 to 30% [i]s the usual range in common fund cases where the

22  recovery is between $50 and 200 million," that "case law surveys suggest that . . . 30–

23  50% [is] commonly . . . awarded in case[s] in which the common fund is relatively

24  small," and that "*cases below $10 million are often [compensated at] more than the 25%*

25  *benchmark*") (emphasis supplied).  In light of the "market rate" for a settlement of this

26  size, Class Counsel's fee request is reasonable.

### 3.    Class Counsel's Contingent-Based Representation.

28  Class Counsel's fee request is justified based on the contingent nature of their year-

long-plus representation.  As recently explained by the Northern District, conducting a case "on an entirely contingent fee basis against a well-represented [d]efendant" actually supports an *upward adjustment from the benchmark*.  Hopkins, 2013 U.S. Dist. LEXIS 16939 at *8, 13.  See also Gardner v. GC Servs., LP, 2012 U.S. Dist. LEXIS 47034 at *19 (S.D. Cal. filed Apr. 2, 2012) (in concluding that a 30% fee award was reasonable, explaining that "class counsel took this case on a contingent fee basis and had to forego other financial opportunities to litigate it"); Thieriot v. Celtic Ins. Co., 2011 U.S. Dist. LEXIS 44852 at *17 (N.D. Cal. filed Apr. 21, 2011) (in awarding a 33% fee, explaining that "[i]t is an established practice to reward attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might be paid nothing at all"); Carter v. Anderson Merchandisers, LP, 2010 U.S. Dist. LEXIS 55629 at *10 (C.D. Cal. filed May 10, 2010) (in awarding the benchmark level of fees, stating that "[t]he case was undertaken on a contingency fee basis" and that "[c]lass [c]ounsel advanced all costs, despite the risk of no recovery in this case, representing a significant financial burden").

### 4.   *Class Counsel's Skill and the Complexity of the Issues.*

As recently explained by the Eastern District, "California wage and hour law is extremely complex and the statutory/administrative language can be particularly difficult to parse."  Morales, 2013 U.S. Dist. LEXIS 41799 at *8.  See also Franco, 2012 U.S. Dist. LEXIS 169057 at *46–47 (explaining that "specialist skills" are required "to litigate the legal theories relating to wage and hour law and labor law"); Garcia v. Gordon Trucking, Inc., 2012 U.S. Dist. LEXIS 160052 at *28, 32–33 (E.D. Cal. filed Oct. 31, 2012) (in awarding 33% of a common-fund settlement, concluding that "th[e] case required substantial skill in litigating complex legal issues, particularly in light of the uncertainty in California law as it relate[s] to [p]laintiffs' meal break claims").  As reflected in the Declaration of Alan Harris filed herewith, Class Counsel have considerable experience in prosecuting complex class-wide cases, including, in particular, wage-and-hour actions such as the within case.  (See September 30, 2013, Harris Decl.

¶10.) "Overall, the specialized skill of Class Counsel in this area of the law [i]s generally an asset to the Class Members." <u>Franco</u>, 2012 U.S. Dist. LEXIS 169057 at *47. Class Counsel's specialized skill is further evidenced by the specific work performed in this case. <u>See</u> <u>In re Omnivision Techs., Inc.</u>, 559 F. Supp. 2d 1036 (N.D. Cal. 2007) (noting that class counsel's successful handling of law-and-motion matters in the action itself "is some testament to [their] skill"); <u>Franco</u>, 2012 U.S. Dist. LEXIS 169057 at *47, 50 (in analyzing class counsel's skill, and in awarding more than the benchmark, noting that "the quality of work performed [in the case] was good"). Accordingly, "[t]his factor weighs in favor of a higher award." <u>Morales</u>, 2013 U.S. Dist. LEXIS 41799 at *8.

### 5. The Reaction of the Class.

Given that this Motion is being filed on the date that Notice is being delivered to the Class,[5] the reaction of Class Members to the settlement—the final factor for judging the reasonableness of a percentage request—is unknown. However, Class Counsel submit that certain circumstances in this case suggest the Class will respond favorably to the Settlement Agreement's terms.

### C. The Lodestar "Crosscheck" Confirms that the Requested Fees Are Reasonable.

When setting a fee award, courts can—and should—secondarily apply the alternative lodestar method to provide "perspective on the reasonableness of a given percentage award." <u>Vizcaino</u>, 290 F.3d 1043, 1050. According to the Ninth Circuit, "[c]alculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award." <u>Id.</u>

"Lodestar calculations are determined by multiplying the number of hours reasonably expended during the litigation by a reasonable hourly rate." <u>In re Heritage Bond Litig.</u>, 2005 U.S. Dist. LEXIS 13555 at *19. It is "common for a counsel's lodestar

---

[5] The Motion is being filed at this early stage to safeguard the due-process rights of absent Class Members. <u>See</u> <u>In re Mercury Interactive Corp. Sec. Litig.</u>, 618 F.3d 988, 994–95 (9th Cir. 2010) (holding that a district court must set a settlement schedule that provides class members an opportunity to review class counsel's completed fee motion before the claims period expires).

figure to [then] be adjusted upward by some multiplier reflecting a variety of factors such as the effort expended by counsel, the complexity of the case, and the risks assumed by counsel."[6] Id. at *71–72 (citing In re Linerboard Antitrust Litig., 2004 U.S. Dist. LEXIS 10532 at *50 (E.D. Pa. filed June 2, 2004) (recognizing that, historically, the average multiplier approved in common-fund cases was 3.89), disapproved on other grounds as stated in In re ATM Fee Antitrust Litig., 686 F.3d 741, 755 n.7 (9th Cir. 2011).

Here, based on the detailed, contemporaneously kept time records submitted with this Motion, Class Counsel's unadjusted lodestar (i.e., with no multiplier) is well in excess of $5000.  (September 30, 2013, Harris Decl. ¶9.)  Significant hours have been spent communicating with the Plaintiff, drafting the Complaint and the First Amended Complaint, reviewing the defense filings and materials provided by them, negotiating a settlement and filing the Motion for Preliminary Approval, as well as securing approval of that Motion.  This cross-check thus confirms the reasonableness of their $5,000 fee request.

### D.   Class Counsel's Requested Expense Reimbursement Is Proper.

The Settlement Agreement permits Class Counsel to seek up to $1,000 in litigation costs (see September 30, 2013, Harris Decl. ¶ 8 & Ex. 2 at ¶ 9).  The costs include travel costs, copy and scanning costs, filing fees, and electronic research fees, which fees are routinely reimbursed.  Franco, 2012 U.S. Dist. LEXIS 169057 at *60.  See also Odrick v. UnionBanCal Corp., 2012 U.S. Dist. LEXIS 171413 (N.D. Cal. filed Dec. 3, 2012) (in a common-fund settlement, noting that class counsel were seeking reimbursement of "costs for a retained expert, mediation, travel, copying, mailing, legal research, and other litigation-related costs," and concluding that "reimbursement of these costs and expenses

---

[6] Although multipliers are prohibited for statutory-fee awards, they are allowed in common-fund settlements.  See Staton, 327 F.3d at 967–68 (explaining that "[t]he procedures used to determine the amount of reasonable attorneys' fees differ concomitantly in case involving a common fund" and that, "in common fund cases, . . . the court can apply a risk multiplier when using the lodestar approach") (citing In re Wash. Pub. Power Supply Sys. Sec. Litig., 19 F.3d 1291, 1299 (9th Cir. 1994)) (emphasis supplied).  Having said that, Class Counsel note that they are not requesting that an upward multiplier be applied to their lodestar.

1    in their entirety is justified"); <u>Knight</u>, 2009 U.S. Dist. LEXIS 11149 at *20 (in a

2    common-fund settlement, stating that class counsel's expenses "relate to online legal

3    research, travel, postage and messenger services, phone and fax charges, court costs, and

4    the costs of travel"; that "[a]ttorneys routinely bill clients for all of these expenses"; and

5    that "it is therefore appropriate for counsel here to recover these costs from the

6    [s]ettlement [f]und").  The request should therefore be approved in full.

*V.    Conclusion.*

7          The Court should approve Class Counsel's request for $5,000 in attorney's fees,

8    $1000 in incurred litigation costs and a $3000 administration fee from the $15,000

9    common-fund settlement.  Under the settlement, Class Members will receive a modest

10   payment, even if the requested fees and costs are granted in their entirety.  Because this is

11   a fair result for the Class, and because the requested fees are less than Class Counsel's

12   lodestar, the present Motion should be granted.

13   Dated:  September 30, 2013                              HARRIS & RUBLE

14

15                                                                      /s/ *Alan Harris*

16                                                          Alan Harris
                                                            *Attorneys for Plaintiff*

17

18

19

20

21

22

23

24

25

26

27

28