Alan Harris (SBN 146079)
HARRIS & RUBLE
6424 Santa Monica Blvd.
Los Angeles, California 90038
Telephone: 323.962.3777
Facsimile: 323.962.3004
aharris@harrisandruble.com

Attorneys for Plaintiff
EDMOND VALENZUELA

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDMOND VALENZUELA, individually and on behalf of all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>MANCINI INTERNATIONAL, INC., WILLIAM MANCINI, MOTION PICTURE AND TELEVISION FUND, and DOES 1 to 20,<br><br>　　　　　Defendants. | Case No. CV-12-09068 DDP (PLAx)<br><br>**DECLARATION OF ALAN HARRIS IN SUPPORT OF MOTION FOR AWARD OF ATTORNEY'S FEES AND REIMBURSEMENT OF COSTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:　December 9, 2013<br>Time:　10:00 a.m.<br>Place:　Ctrm. 3, 2nd Floor<br>　　　　312 N. Spring Street<br>　　　　Los Angeles, CA 90012<br><br>*Assigned to Hon. Dean D. Pregerson*<br><br>Complaint filed Aug. 15, 2012<br>Action Removed Oct. 22, 2012 |

**ALAN HARRIS** declares under penalty of perjury of the laws of the United States and the State of California as follows:

1. I am a member in good standing of the State Bar of California and am the attorney for Plaintiff in the within action. I make this Declaration in support of the Motion for Award of Attorney's Fees and Reimbursement of Costs. If sworn as a witness, I could competently testify to each and every fact set forth herein from my own personal knowledge.

*Summary of Plaintiff's Claims and of Settlement Negotiations*

2. This case was filed on August 15, 2012. Ultimately, after investigation and research, a First Amended Complaint was filed, and the allegations therein are the ones addressed by the Settlement. A true and correct copy of the Settlement Agreement and General Release ("Settlement Agreement") is attached to the July 29, 2013 Declaration of Alan Harris as **Exhibit 1** (ECF Doc. 28).

3. According to the information provided to me, there are approximately 100 individuals who were employed by Mancini International, Inc. ("MII"), William Mancini, an individual, and Motion Picture and Television Fund ("MPTF") in connection with the annual Oscar "Night Before Party" at issue in this case, a charity event.

4. After extensive negotiations with defense counsel, including the exchange of documents and settlement offers and counteroffers which took place over an extended period of time, the parties accepted a settlement structure. With time, the parties ultimately drafted and executed the Settlement Agreement, **Exhibit 1**.

*Reasonableness of the Settlement Agreement*

5. I have concluded that the Settlement Agreement represents a fair, reasonable, and adequate resolution of this case for several reasons. First, certain potentially dispositive defenses may apply to various of the class-wide claims. For example, due to the short duration of the event and the law enforcement background of the Class Members, the defense might well prevail on an independent contractor defense. MII is an entity with limited assets which might well be abandoned or file bankruptcy

before standing for the maximum judgment that might be awarded in this case. Indeed, in connection with the settlement negotiations, I came to understand that the Class Members other than Plaintiff had all been paid. The MPTF is a charitable organization with its own defenses, primarily having the ability to claim that it retained MII to secured the services of independent contractors and that it is entirely without fault in the matter. Despite this and other substantive problems, Plaintiffs successfully negotiated a $15,000 Gross Settlement Payment that will provide compensation for Defendants' alleged violations. All told, this is a reasonable result, achieved after lengthy negotiations. There is no evidence that Defendants routinely acted in a venal fashion vis-à-vis the Class Members. To the contrary, I have been advised by the defense that all of approximately one hundred employees other than Plaintiff have been paid their wages. Their hourly rates were all well in excess of the minimum wage. It is my understanding that MII is a small, privately held entity, run in a typically entrepreneurial fashion.

6. Before executing the Settlement Agreement, my office reviewed the terms with Plaintiff. We discussed the terms with him, as well as the considerations described herein. Plaintiff had previously provided Harris & Ruble with time and effort, providing us with factual background and supporting information, detailing that the employees and he had not been paid on completion of their services. Plaintiff concluded that the settlement represents a fair, reasonable, and adequate resolution of this case, and he executed the Settlement Agreement. I have advised him of his role as class representative and he indicated to me that he understood it. He articulated a concern that Defendants behave in a responsible fashion vis-à-vis compliance with wage and hour laws in the future, and I think the experience of this case will further that goal.

7. The payments already made by MII to Class Members, along with the Settlement Fund, will provide all Class Members employed by Defendants in California in connection with the "Night Before Party" with *payment in full* of their wages, and an additional, token payment.

8. The Settlement Agreement called for the appointment of Harris & Ruble as

Claims Administrator to deliver the Class Notice and claim form to some 100 individuals within the Settlement Class.  Harris & Ruble has served as Claims Administrator in other, similar situations.  Harris & Ruble has delivered the Class Notice and claim form to the individuals in the Settlement Class.  Harris & Ruble seeks reimbursement of the costs for the Claims Administration in the amount of $3,000.

9. To date, Plaintiff's counsel has advanced all costs incurred in this case, which total just over $1,000.  I have reviewed our confidential time records kept in this matter.  The lodestar is more than three times $5000.  Similarly, the required legal services have been provided on a contingent-fee basis.  Plaintiff's counsel have no conflict of interest with Plaintiff or any members of the Settlement Class, and I believe that Plaintiff's counsel have, thus far, fairly and adequately represent the interests of the Class.

*Experience*

10. I have been and am licensed as an attorney, first in Illinois (1974) and later in California (1989).  I am a graduate of the University of Illinois (A.B. 1970, J.D. 1974).  After graduation from law school in January 1974, I was hired as a litigation associate at a plaintiffs' antitrust boutique in Chicago, Illinois: Freeman, Freeman & Salzman, P.C.[1]  I became a partner in that firm in 1980, and I started my own practice in 1982.  I speak before professional organizations on topics of interest to the Bar, and I have represented plaintiffs in complex business litigation for over thirty-six years.  See e.g., Illinois v. Ill. Brick Co., Inc., 431 U.S. 720 (1977); In re My Left Hook, LLC, 129 Fed. Appx. 352 (9th Cir. 2005); Gregory v. SCIE, LLC, 317 F.3d 1050 (9th Cir. 2003); In re Blue Coal Corp., 986 F.2d 687 (3d Cir. 1993); In re Blue Coal Corp., 206 B.R. 730 (M.D. Pa. 1997); U.S. v. Gleneagles Inv. Co., Inc., 584 F. Supp. 671, 689 (M.D. Pa. 1984), aff'd. in part and

---

[1] Of my still-living partners in Freeman, Freeman & Salzman, a firm that dissolved in 2007, each became a senior partner in a leading national law firm.  Lee Freeman, Jr. was a partner and chair of the Antitrust Litigation Practice Group at Jenner & Block from 2007 to June 2011, and he is now of counsel at Katten & Temple LLP.  Jerrold Salzman is of counsel at Skadden, Arps, Slate, Meagher & Flom LLP.  Tyrone Fahner is a partner at Mayer Brown, having served as its co-chair from 1998 to 2001 and its chair from 2001 to 2007.

vacated in part, and remanded sub. nom., U.S. v. Tabor Ct. Realty Corp. 803 F.2d 1288 (3d Cir. 1986), cert. den. sub. nom., McClellan Realty Co. v. U.S. 483 U.S. 1005 (1987); In re Uranium Antitrust Litig., 503 F. Supp. 33 (N.D. Ill. 1981); In re Grand Jury, 469 F. Supp. 666 (M.D. Pa. 1980); In re Anthracite Coal Antitrust Litig., 82 F.R.D. 364 (M.D. Pa. 1979), In re Folding Carton Antitrust Litig., 83 F.R.D. 251 (N.D. Ill. 1978); In re Anthracite Coal Antitrust Litig., 78 F.R.D. 709 (M.D. Pa. 1978); In re Masterkey Antitrust Litig., 1977 U.S. Dist. LEXIS 12948 (D. Conn. 1977) (six-week jury trial for plaintiffs); A. Cherney Disposal Co. v. Chicago & Suburban Refuse Disposal Corp., 68 F.R.D. 383 (N.D. Ill. 1975); In re Cement-Concrete Block, Chicago Area, Grand Jury Proceedings, 381 F. Supp. 1108 (N.D. Ill. 1974); Parmet v. Lapin, 2004 Cal. App. Unpub. LEXIS 5217 (June 1, 2004).  I have gone to jury and bench trials on behalf of plaintiffs and, once, a bench trial for a defendant, Allstate Insurance Company.  I have represented employees in numerous disputes concerning their receipt of wages, both before the California Division of Labor Standards Enforcement and before state and federal courts.  See, e.g., Jacobs v. CSAA Inter Ins. Bureau, 2009 U.S. Dist. LEXIS 37153 (N.D. Cal. filed May 1, 2009); Escobar v. Whiteside Constr. Corp., 2008 U.S. Dist. LEXIS 68439 (N.D. Cal. 2008) (wage-and-hour collective action); Tremblay v. Chevron Stations, Inc., 2008 Westlaw 2020514 (N.D. Cal. 2008) (wage-and-hour collective action); Gonzalez v. Preferred Freezer Servs. LBF, LLC, 2012 U.S. Dist. LEXIS 93013 (C.D. Cal. filed July 5, 2012) (successful opposition to a defense motion to compel arbitration in a putative wage-and-hour class action); Gonzalez v. Preferred Freezer Servs. LBF, LLC, 2012 U.S. Dist. LEXIS 139764 (C.D. Cal. filed Sept. 27, 2012) (successful motion to correct improper defense contact of class members in a putative wage-and-hour class action); Covillo v. Specialty's Café, 2012 U.S. Dist. LEXIS 114602 (N.D. Cal. filed Aug. 14, 2012) (successful opposition to a defense motion to compel arbitration in a putative wage-and-hour class action); Perez v. Maid Brigade, Inc., 2007 U.S. Dist. LEXIS 78412 (N.D. Cal. filed Oct. 11, 2007) (successful opposition to a defense motion to compel arbitration in a putative wage-and-hour class action); Hoffman

v. Uncle P Prods., 2008 Cal. App. Unpub. LEXIS 3609; Bithell v. E.P. Mgmt. Servs., LP, 2007 WL 4216854 (Cal. Ct. App. 2007) (sustaining a class-wide settlement as fair and reasonable, and finding that class counsel adequately represented the class); DuPont v. Avalon Hollywood Servs., Inc., 2007 WL 93386 (Cal. App. 2007); Gregory v. Superior Court, 2004 WL 2786357 (Cal. Ct. App. 2004). In addition, I have been appointed lead class counsel in many wage-and-hour class actions. See, e.g., Kang v. Albertson's, Inc., C.D. Cal. Case No. CV 07-00894 CAS ($6,637,500 settlement); Tremblay v. Chevron Stations, Inc., N.D. Cal. Case No. CV 07-6009 EDL ($4,500,000 settlement); Doty v. Costco Wholesale Corp., C.D. Cal. Case No. CV 05-3241 FMC ($7,500,000 settlement); Agatep v. Exxon Mobil Corp., C.D. Cal. Case No. CV 05-2342 GAF ($1,500,000 settlement); Alfano v. Int'l Coffee & Tea, LLC, C.D. Cal. Case No. CV 04-8996 SVW; Jenne v. On Stage Audio Corp., C.D. Cal. Case No. CV 04-2045 CAS; Hansen v. Advanced Tech Sec. Servs., Inc., Los Angeles Sup. Ct. Case No BC 367175 ($1,050,000 settlement); Ross v. Human Res., Inc., Los Angeles Sup. Ct. Case No. BC 351506; Harrington v. Manpay, LLC, Los Angeles Sup. Ct. Case No. BC 312171 ($1,000,000 settlement); Brackett v. Saatchi & Saatchi, Los Angeles Sup. Ct. Case No. BC 298728; Readmond v. Straw Dogs, Inc., Los Angeles Sup. Ct. Case No. BC257394; Greenberg v. EP Mgmt. Servs., LP, Los Angeles Sup. Ct. Case No. BC 237787 ($5,348,000 settlement); Angel Paws, Inc. v. Avalon Payroll Servs., Inc., Los Angeles Superior Court Case No. BC 188982 ($450,000 settlement); Saunders v. Metro Image Group, San Diego Sup. Ct. Case No. GIC 809753; Stratford v. Citicorp West FSB, Monterey Sup. Ct. Case No. M 81026 ($950,000 settlement); Deckard v. Banco Popular N. Am., related to Silva v. Banco Popular N. Am., C.D. Cal. Case No. CV 08-6709 JFW ($1,050,000 settlement). The present case, along with a majority of the foregoing cases, was prosecuted on a contingent-fee basis.

I have read the foregoing, and the facts set forth therein are true and correct of my own personal knowledge. Executed September 30, 2013, in the County of Los Angeles, State of California.

                                                        /s/ *Alan Harris*
                                                        Alan Harris